**Beth TESMER and Scott Ronald Orth, Plaintiffs–Appellants,**

v.

**COLORADO HIGH SCHOOL ACTIVITIES ASSOCIATION, Defendant–Appellee.**

No. 05CA2334.

Colorado Court of Appeals, Div. A.

April 20, 2006.

Law Offices of Sandomire & Schwartz, Gabriel N. Schwartz, Colin Edward Moriarty, Denver, Colorado, for Plaintiffs–Appellants.

Alexander Halpern, LLC, Alexander Halpern, Michelle Murphy, Boulder, Colorado, for Defendant–Appellee.

DAVIDSON, Chief J.

In this action concerning eligibility to play high school athletics, plaintiffs, Scott Orth and his mother, Beth Tesmer, appeal from the trial court's order denying their request for a preliminary injunction against defendant, Colorado High School Activities Association (CHSAA). We affirm.

## I. Background

Orth is now a fifth-year high school senior. He had been diagnosed with attention deficit disorder (ADD) when he was eight years old, put on medication, and placed in a speech class in fourth grade. In middle school, he did not take any remedial or special education classes and stopped taking medication.

Orth began high school in 2001. It was determined that Orth's ADD did not require that he take special education classes or that he be given any special academic accommodations, except additional time for taking tests and homework as well as copies of class notes.

From December of 2001 to February of 2002, Orth suffered from a sinus infection that caused him to miss six to ten weeks of school. He did not obtain a sufficient number of passing grades and was required to repeat the ninth grade.

The issues in this case arose when, in the fall of 2005, Orth's twelfth grade year, he was barred from playing football because of what is termed "the eight semester rule." This rule, set forth in the bylaws of the CHSAA (of which Orth's high school is a member), limits student eligibility for high school athletics to eight consecutive semesters after a student first begins high school. The purpose of the rule is to prevent students from gaining an unfair athletic advantage by delaying their graduation in order to increase their size or athletic abilities, and to reduce the risk of physical injury that can result from unequal competition.

Because Orth was in his ninth consecutive semester of high school when he began the twelfth grade, according to CHSAA rules he was ineligible to play football.

Orth filed an application for a "hardship" waiver with CHSAA's commissioner. Pursuant to the CHSAA bylaws, a hardship is "an unforeseen, unavoidable and/or uncorrectable act, condition, or event that imposes a severe, non-athletic burden upon the student or his/her family." The bylaws also provide that no hardship waiver may be granted for students who attended school and had an opportunity to earn credits.

After a hearing, the commissioner denied the request, finding that Orth had not shown that his ADD prevented him from attending school or otherwise earning credits. Pursuant to the procedures set forth in the bylaws, Orth appealed the commissioner's decision to the appeals committee, which, after a de novo hearing, upheld the commissioner's denial. Orth appealed again to the CHSAA Executive Committee, which conducted a new hearing and again unanimously upheld the denial.

Orth, together with his mother, then filed a complaint in district court, alleging that the application of the eight semester rule to him

violated the statutory protections of the Colorado Anti–Discrimination Act (CADA) regarding the developmentally disabled set forth in § 27–10.5–112, C.R.S 2005, and the prohibition against disability-based discrimination in places of public accommodation set forth in § 24–34–601, C.R.S.2005. He sought permanent injunctive relief and statutory penalties. He also requested a preliminary injunction to stop CHSAA from applying its eight semester rule to him so that he could play football during the fall season. The trial court denied the preliminary injunction, and this appeal followed.

## II. Mootness

■■■■ As a threshold issue, because it is a matter of subject matter jurisdiction, we consider whether this case is moot. *See State Bd. of Chiropractic Exam'rs v. Stjernholm,* 935 P.2d 959, 964 (Colo.1997). A claim is moot "when a judgment, if rendered, would have no practical legal effect upon the existing controversy." *Van Schaack Holdings, Ltd. v. Fulenwider,* 798 P.2d 424, 426 (Colo. 1990); *see Fullerton v. County Court,* 124 P.3d 866, 867 (Colo.App.2005).

The primary remedy Orth seeks is injunctive relief for CHSAA's alleged violations of §§ 24–34–601(2) and 27–10.5–112(1), C.R.S. 2005. However, the record indicates that the school's football season ended in the fall of 2005. Moreover, there was no evidence submitted that Orth was attempting to play any sport during the spring season. Thus, it would appear that Orth's request for an injunction has no practical effect upon any controversy between the parties.

However, existing case law suggests that other students have been diagnosed with ADD and could make similar claims in the future. *See, e.g., Washington v. Ind. High Sch. Athletic Ass'n,* 181 F.3d 840 (7th Cir. 1999); *McPherson v. Mich. High Sch. Athletic Ass'n,* 119 F.3d 453 (6th Cir.1997); *Bingham v. Or. Sch. Activities Ass'n,* 24 F.Supp.2d 1110 (D.Or.1998); *Rhodes v. Ohio High Sch. Athletic Ass'n,* 939 F.Supp. 584 (N.D.Ohio 1996).

Additionally, because the duration of a "season" of high school sports usually is only a few months, completing similar litigation within an athletic season is unlikely. *Cf. Grossman v. Dean,* 80 P.3d 952, 960 (Colo. App.2003) (unlikely litigation can be completed within 120–day legislative session). Moreover, eligibility for interscholastic high school athletics is an issue that affects entire athletic teams, schools, and their respective communities.

Under these circumstances, we conclude that review of the denial of Orth's request for injunctive relief is proper. *See State Bd. of Chiropractic Exam'rs v. Stjernholm, supra,* 935 P.2d at 970 (discussing the two exceptions to the mootness doctrine: (1) issues that are capable of repetition, yet evade review; and (2) issues of great public importance or recurring constitutional violations); *Carney v. Civil Serv. Comm'n,* 30 P.3d 861 (Colo.App.2001) (same).

## III. Preliminary Injunction

■■■■ A trial court may grant a preliminary injunction only if the moving party demonstrates each of six requirements: (1) that there is a reasonable probability of success on the merits; (2) that there is a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; (3) that there is no plain, speedy, and adequate remedy at law; (4) that the granting of a preliminary injunction will not disserve the public interest; (5) that the balance of equities favors the injunction; and (6) that the injunction will preserve the status quo pending a trial on the merits. *Rathke v. MacFarlane,* 648 P.2d 648, 653–54 (Colo.1982).

■■■■ A preliminary injunction is an extraordinary remedy, and, therefore, a court may deny a motion for preliminary injunction solely on the ground that the plaintiff did not show a probability of success on the merits. *See Rathke v. MacFarlane, supra,* 648 P.2d at 654. The failure to demonstrate entitlement to a preliminary injunction, however, does not preclude the plaintiff from proceeding to trial on the underlying request for permanent injunctive relief. *See, e.g., Lewis v. Colo. Rockies Baseball Club, Ltd.,* 941 P.2d 266, 269 (Colo.1997).

■ We review the trial court's decision regarding a preliminary injunction under an abuse of discretion standard. We consider whether the ruling was manifestly arbitrary, unreasonable, or unfair or was based on an erroneous application of the law. *Bloom v. Nat'l Collegiate Athletic Ass'n,* 93 P.3d 621, 623 (Colo.App.2004).

Here, after an evidentiary hearing, the trial court denied Orth's motion for a preliminary injunction on the ground that he had not shown he had a reasonable probability of success on the merits of either statutory claim. Although we do so on different grounds as discussed below, we conclude that the trial court's denial of the preliminary injunction was proper.

## IV. Probability of Success on the Merits

The trial court concluded that Orth failed to show that he had a reasonable probability of succeeding on the merits of either claim because he did not demonstrate a causal link between his ADD and his failure to play sports in his first ninth grade year. Although our reasoning differs, we agree that Orth failed to show that he had a reasonable probability of success.

### A. Orth's Claim Under § 24–34–601(2)

■ We first conclude that the trial court reached the correct result in denying Orth's § 24–34–601(2) claim.

#### 1. Trial Court's Ruling

■ Whenever possible, the CADA should be interpreted consistently with the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. (2006). *See* Colo. Div. Civil Rights Rule 60.1(B) (the CADA is "substantially equivalent" to the ADA); Rule 60.1(C) (whenever possible, the CADA should be interpreted consistently with the ADA). *See also Urbish v. Lamm,* 761 P.2d 756 (Colo. 1988) (Deference is given to the interpretation of a statute by the agency charged with its enforcement so long as the agency's interpretation is consistent with the statute's clear language and intent.).

As relevant here, § 24–34–601(2) provides that it is a "discriminatory practice ... [to] deny ... *because of* disability ... the full ... privileges ... of a place of public accommodation" (emphasis supplied).

■ Although CHSAA suggests otherwise, as we read the statute, to prevail on a discrimination claim under § 24–34–601(2), a plaintiff must show that, "but for" the disability, he or she would not have been denied the full privileges of a place of public accommodation, but need not establish that the disability was the "sole" cause. This reading is consistent with the plain terms of the statute. *See American Heritage Dictionary* 159 (4th ed.1999) (defining "because of" as "on account of; by reason of").

It is also consistent with opinions issued by the vast majority of federal circuit courts that have addressed the issue under the ADA, *See McNely v. Ocala Star–Banner Corp.,* 99 F.3d 1068, 1073–77 (11th Cir.1996) (concluding that "because of," "by reason of," and "on the basis of" in the ADA require a "but for" causal link between disability and discrimination, but do not require that disability be the "sole" cause of discrimination); *Soledad v. United States Dep't. of Treasury,* 304 F.3d 500, 503–04 (5th Cir.2002) (same); *Katz v. City Metal Co.,* 87 F.3d 26, 30 (1st Cir.1996); ("because of" in the ADA means that discriminatory action cannot be in whole or in part based on disability); *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 468–69 (4th Cir.1999) (concluding that "on the basis of" in the ADA requires causal link, but that disability need not be "sole" cause of discrimination because, unlike the Rehabilitation Act, 29 U.S.C. § 794(a), "solely" is not included in ADA language); *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1029 n. 5 (8th Cir.1999) ("based upon disability" does not mean disability is sole reason for adverse action); *Foster v. Arthur Andersen,* 168 F.3d 1029, 1033 (7th Cir.1999) ("because of" does not mean "solely because of"); *Lovell v. Chandler,* 303 F.3d 1039, 1052 (9th Cir.2002) (not reading "solely" into causal requirement of ADA). *But see Monette v. Elec. Data Sys.,* 90 F.3d 1173, 1177–78 (6th Cir.1996) (because claims under ADA roughly parallel claims under Rehabilitation Act, which requires disability be sole cause of alleged discrimination, court interpreted ADA as also requiring

"sole" causation); *Fitzgerald v. Corrections Corp. of America,* 403 F.3d 1134, 1144 (10th Cir.2005) (same).

Accordingly, the trial court correctly evaluated Orth's probability of success under § 24–34–601(2) by examining whether he had shown a causal link between his ADD and the alleged discriminatory act of barring him from playing sports in his fifth year of high school. However, in its determination that Orth's ADD did not prevent him from playing football in his twelfth grade year, the trial court answered the wrong question: it was the repetition of Orth's ninth grade year, not his failure to play football in his first ninth grade year, that was the reason CHSAA's eight semester rule barred Orth from playing sports in his fifth year of high school. Thus, the proper inquiry was whether Orth had to repeat ninth grade because of his ADD.

Here, there is substantial evidence in the record that suggests that Orth repeated ninth grade, not because of his ADD, but because of his parents' divorce, problems adjusting to a new school, and a sinus infection that required that he miss approximately two months of school. However, the testimony from Orth and his mother is to the contrary. Thus, the question whether, "but for" his ADD, Orth would have had to repeat ninth grade, is a factual determination, which must be made by the trial court.

CHSAA argues that such a determination can be inferred from the trial court's order. We disagree. The court's otherwise extensive ruling does not include this critical finding. Nevertheless, because we agree with CHSAA's alternative argument that the undisputed facts conclusively show that Orth does not have a disability under either statute, we need not remand the matter to the trial court for further findings. *See Rush Creek Solutions, Inc. v. Ute Mtn. Ute Tribe,* 107 P.3d 402, 406 (Colo.App.2004) (legal effect of undisputed facts is a question of law). Instead, we conclude on different grounds that the trial court was correct in its determination that Orth did not have a reasonable probability of success on the merits of either claim. *See Rush Creek Solutions, Inc. v. Ute Mtn. Ute Tribe, supra,* 107 P.3d at 406 (appellate court may affirm trial court's ruling based on any grounds supported by the record).

### 2. Orth's ADD Not a Disability Under § 24–34–601(2)

A "disability," as used in § 24–34–601(2), is "a physical impairment which substantially limits one or more of a person's major life activities and includes a record of such an impairment and being regarded as having such an impairment." *See* § 24–34–301(2.5)(a), CRS 2005. A "disability" includes a mental impairment, which is "any mental or psychological disorder such as developmental disability, organic brain syndrome, mental illness, or specific learning disabilities." *See* §§ 24–34–301(2.5)(b)(II)–(III) C.R.S.2005.

This definition is very similar to the definition of "disabled" set forth in the ADA. *See* 42 U.S.C. § 12102(2) (2005); *see also* Colo. Div. Civil Rights Rule 60.1(B)-(C); *cf.* 20 U.S.C. § 1400 (2005) (Individuals with Disabilities Education Act).

CHSAA does not dispute that learning is a "major life activity" or that ADD can qualify as a "mental impairment." It argues, however, that accepting as true the evidence put forth by Orth regarding the impact of his ADD on his learning, his ADD does not, as a matter of law, constitute a "substantial[ ] limit[ation]" under § 24–34–601(2). We agree.

Under the ADA, and therefore under § 24–34–601(2), to constitute a "substantial" limitation, an impairment must prevent or severely restrict an individual from performing a major life activity. *See Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 692, 151 L.Ed.2d 615 (2002). "Substantial" suggests the impairment must be "of ample or considerable amount, quantity, or dimensions," and its effects must be permanent or long-term. *See Toyota Motor Mfg. v. Williams,* 534 U.S. at 196–198, 122 S.Ct. at 691 (disability that only interferes with major life activity in a minor way is not an actionable "disability" for purposes of the ADA; its impact must be permanent or long term).

■ A mere diagnosis of a disability does not itself indicate that the disability substantially affected an individual's major life activities. *See Toyota Motor Mfg. v. Williams, supra,* 534 U.S. at 198, 122 S.Ct. at 692. Rather, whether an impairment substantially limits an individual's major life activities is a particularized inquiry that considers the effect of the individual's impairment on his or her major life activities, including when corrective measures or accommodations are made. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 480, 119 S.Ct. 2139, 2147, 144 L.Ed.2d 450 (1999) (determination whether an individual is "disabled" under the ADA is made on a case-by-case basis, and does not exclude the effect of corrective or mitigating measures); *Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 520, 119 S.Ct. 2133, 2137, 144 L.Ed.2d 484 (1999) (same); *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 565, 119 S.Ct. 2162, 2169, 144 L.Ed.2d 518 (1999) (same).

Here, it is undisputed that Orth was diagnosed with ADD in third grade and received medical treatment for it until his eighth grade year. The record shows that he has not received professional or medical treatment for his ADD since his eighth grade year, and there is no evidence to suggest that the symptoms associated with Orth's ADD increased or decreased since his diagnosis. It is also undisputed that, while in high school, Orth did not require any special evaluations, individualized education plan, or special education program, and was given only "minor accommodations," including extra time for taking tests and completing homework, to accommodate his ADD.

Yet, since his diagnosis of ADD, Orth was successfully promoted from grade to grade every year but his first year of ninth grade. His academic transcripts also show that, except for that year, he passed all but one of his classes, a tenth grade art class. And, in his next four years of high school, Orth earned over a "C" average, including two "A" grades in English and "B" grades in two math classes, a literature class, and a science class. Furthermore, Orth tested as either "proficient" or "partially proficient" in all subjects tested on the CSAP exams with the exception of mathematics. In addition, the record shows that he participated in interscholastic sports and was considered a leader on his football team.

It is irrefutable, from this undisputed evidence, that Orth's ADD did not prevent or severely restrict him on a permanent or long term basis from learning and obtaining an education. Regardless of whether Orth's ADD caused him to repeat ninth grade, his overall school record reflects satisfactory performance for every other year of school. In the context of this otherwise successful school performance, his single failed year of school—even if we assume it was the result of ADD—was a temporary and short term phenomenon, which does not render him "disabled" for purposes of the ADA and the CADA. *See Toyota Motor Mfg. v. Williams, supra,* 534 U.S. at 198, 122 S.Ct. at 691 (impairment's impact must be permanent or long term); *see also Hess v. Rochester Sch. Dist.,* 396 F.Supp.2d 65, 74 (D.N.H.2005) (plaintiff's ADD was not a substantial limitation where its severe impacts only lasted for a single year when he was not receiving treatment); *cf. Carroll v. Xerox Corp.,* 294 F.3d 231, 240–41 (1st Cir.2002) (impairment resulting in eight month restriction on working was not of sufficient duration to constitute a substantial limitation); *Pack v. Kmart Corp.,* 166 F.3d 1300, 1306 (10th Cir.1999) (impairment that significantly restricted sleep for seven months was not considered "long term" in order to constitute a substantial limitation).

Thus, because the undisputed facts demonstrate that Orth's ADD cannot constitute a "disability" within the meaning of § 24–34–601(2), he does not have a reasonable probability of success on the merits. We will therefore not disturb the trial court's order denying Orth's request for a preliminary injunction. *See Rush Creek Solutions, Inc. v. Ute Mtn. Ute Tribe, supra,* 107 P.3d at 406 (trial court's ruling may be affirmed on any grounds supported by the record).

B. Orth's Claim Under § 27–10.5–112

■ We similarly resolve Orth's claim under § 27–10.5–112.

A threshold requirement for proving a violation of § 27–10.5–112(1) is that the plaintiff have a "developmental disability" as defined by § 27–10.5–102(11)(a)–(b), C.R.S.2005. *See* § 27–10.5–112(1) ("No otherwise qualified person, by reason of having a *developmental disability,* shall be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity which receives public funds.") (emphasis added).

However, the record of the preliminary injunction hearing reflects no evidence that suggests that Orth is "developmentally disabled." To the contrary, it was undisputed that Orth does not suffer from mental retardation or any similar neurological condition, and that, during his high school years, his ADD did not require professional treatment, special education classes, or an individualized education plan. *See* § 27–10.5–102(11)(a) (defining "developmental disability" as including a disability "attributable to mental retardation or related conditions").

Moreover, for a person to qualify as having a "developmental disability," the statute requires that a "community centered board" make that determination. *See* § 27–10.5–102(11)(b). Again, there is nothing in the record to show that Orth was deemed to be developmentally disabled by a community centered board.

Based on our disposition, we do not address any remaining issues raised by the parties.

The order is affirmed.

Judge WEBB and Judge STERNBERG * concur.